**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| In re: AMR MOHSEN | ) | Case No.: 12-CV-03610-LHK |
| Debtor, | ) ) ) | ORDER AFFIRMING BANKRUPTCY COURT ORDER |
| | ) ) | |
| AMR MOHSEN | ) | |
| Appellant, | ) ) | |
| v. | ) ) | |
| CAROL WU, Chapter 7 Trustee, | ) | |
| Appellee. | ) ) | |

Appellant Amr Mohsen ("Mohsen"), appearing *pro se*, appeals the Bankruptcy Court's Order Regarding Trustee's Final Account and Final Fee Applications of Trustee's Accountant and Attorneys ("Order"). The Order: (1) approved the trustee's final account and fee application, in the amount of $12,669.09 for fees and $67.95 for expenses; (2) approved the final fee application of the trustee's accountant in the amount requested, $36,562 for fees and $115.62 for expenses; and (3) approved the final fee application of the trustee's counsel in the amount of $102,226.50 for fees and $11,172.73 for expenses. For the reasons stated below, this Court AFFIRMS the Bankruptcy Court's Order.

1

I.      BACKGROUND

    A.      Bankruptcy Petition and Administration of Estate

Mohsen is the founder and former CEO of Aptix Corporation ("Aptix")[1], a high tech corporation.  Appellee's Excerpts of Record ("ER") Tab 1 at 2.  In the late 1990s, Aptix sued a rival company for patent infringement.  *See Aptix Corporation, et al. v. Quickturn Design Sys.*, Case No. 98-cv-00762-WBS.  The district court, however, found that Mohsen had falsified and fabricated evidence.  *See id.*  Subsequently, the United States Attorney charged Mohsen with various criminal offenses, including perjury, obstruction of justice, and witness tampering.  *See USA v. Mohsen, et al.*, Case No. 03-cr-00095-WBS.  In March 2004, Mohsen was incarcerated pending trial on those charges.  *See id.*  Mohsen was later convicted and sentenced in January 2007 to 17 years in prison.  ER Tab 5, Ex. A.  He remains incarcerated today.  *See id.*

While incarcerated, Mohsen filed a chapter 11 bankruptcy petition on February 8, 2005.  ER Tab 1 at 2.  Mohsen subsequently filed two adversary proceedings.  *Id.*  In the first, Mohsen sought damages from Polytex Corporation ("Polytex") related to rights in some carpets.  ER Tab 1 at 5.  In the second, Mohsen alleged that State Farm Fire and Casualty Company ("State Farm") had not paid a sufficient amount of money to him to settle a homeowner's policy insurance claim.  ER Tab 1 at 6.  State Farm had already paid $1,756.234.18, but Mohsen alleged that State Farm still owed him $232,000.  *Id.*

In December 2005, after Mohsen lost his home to foreclosure, the Bankruptcy Court ordered Mohsen's case to be converted from chapter 11 to chapter 7.  ER Tab 7 at 1.  On December 22, 2005, the Bankruptcy Court appointed Carol Wu ("Trustee") as trustee.  ER Tab 4 at 1.  The Bankruptcy Court appointed Goldberg, Stinnett, Davis & Lichey ("Trustee's Counsel") as Trustee's counsel on January 12, 2006, ER Tab 1, Ex. A at 1.  The Bankruptcy Court also appointed Kokjer, Pierotti, Maiocco & Duck, LLP ("Trustee's Accountant") as Trustee's accountant on January 26, 2006.  ER Tab 2 at 12.

---

[1] In April 2004, Aptix filed a voluntary chapter 11 bankruptcy petition.  ER Tab 16 at 2.  Aptix's assets were sold, and the case converted to chapter 7.  *Id.*  In March 2006, the Aptix bankruptcy closed.  *Id.*

Case No.: 12-CV-03610-LHK
ORDER AFFIRMING BANKRUPTCY COURT ORDER

United States District Court
For the Northern District of California

Immediately after their appointment, Trustee and Trustee's Counsel began to investigate other recoverable assets for the estate.  On March 20, 2006, Trustee filed an adversary proceeding to deny Mohsen's discharge ("727 Action").  BR ECF No. 186.[2]  Trustee asserted that Mohsen concealed, destroyed, falsified, or failed to keep adequate books and records from which his affairs could be ascertained, which is a basis for denial under 11 U.S.C. § 727(a)(3).  ER Tab 13, Ex. C.  The Bankruptcy Court ultimately found in favor of Mohsen.  ER Tab 1 at 7-8.

On May 31, 2006, Trustee filed a motion to disqualify Mohsen's chapter 11 counsel, David Levin ("Attorney Levin"), as Mohsen's counsel based on an asserted conflict of interest and to require Attorney Levin to disgorge any fees received from Mohsen's estate ("DQ Motion").  BR ECF No. 206.  The Bankruptcy Court ultimately denied the motion to disqualify but directed Attorney Levin to disgorge $4,480 in fees received in connection with representing a company that Mohsen owned, which claimed an interest in certain funds held by Mohsen's estate.  ER Tab 7, Ex. C.  As a result, Trustee recovered $4,480 for the estate.  *See id.*

In September 2006, Trustee filed a second adversary proceeding that sought a judicial declaration that assets of the three entities Mohsen controlled—AIM Inc., AIM LLC, and Star Trust—constituted property of the bankruptcy estate.  ER Tab 1 at 4-5.  At the time, Mohsen had claimed that $51,000 of the funds from the debtor-in-possession account and turned over to Trustee were held in trust for AIM Inc. and AIM LLC (collectively, "AIM").  ER Tab 1 at 4.  Additionally, Mohsen claimed that AIM was the owner of funds recovered from Cadence Design Systems, Inc. in the amount of $68,407.42.  *Id.*

Trustee's complaint against Star Trust and AIM sought declaratory relief regarding those funds, including that AIM was the alter ego of Mohsen, and that all assets of Star Trust and AIM are assets of the bankruptcy estate.  ER Tab 1 at 4-5.  Star Trust answered the complaint.  ER Tab 16 at 14.  However, AIM failed to answer.[3]  ER Tab 1 at 5.  The Bankruptcy Court then entered a default judgment against AIM.  *Id.*  Subsequently, Mohsen filed appeals before the District Court,

---

[2] "BR ECF" refers to the docket numbers in Mohsen's bankruptcy case (Case No. 05-50662).
[3] Mohsen attempted to file answers on behalf of AIM.  ER Tab 1 at 5.  However, Trustee successfully moved to strike Mohsen's answers on behalf of AIM.  *Id.*

3

Case No.: 12-CV-03610-LHK
ORDER AFFIRMING BANKRUPTCY COURT ORDER

Bankruptcy Appellate Panel, and the Ninth Circuit.  *Id.*  All affirmed the Bankruptcy Court's judgment.  *Id.*  Mohsen currently has a petition for rehearing or rehearing en banc before the Ninth Circuit.  Appellant's Brief ("Br."), Ex. A.

In Spring 2007, after completing an investigation into the merits of the two adversary proceedings that Mohsen had filed during the chapter 11 case, Trustee moved to abandon the suit against Polytex and to compromise the suit against State Farm.  ER Tab 1 at 5-6.  The Bankruptcy Court approved the compromise with State Farm over Mohsen's opposition.  *Id.* at 6.  On appeal, the Bankruptcy Appellate Panel ("BAP") upheld the Bankruptcy Court's approval of the compromise.  *Id.*  Thereafter, the Ninth Circuit affirmed the BAP.  *Id.*  The Supreme Court denied Mohsen's petition for a writ of certiorari.  *Id.*

**B.     Fee Applications and Objections**

On May 18, 2011, Trustee's Counsel filed its final fee application requesting $134,128.50 in fees and $11,172.73 in expenses.  ER Tab 1.  On July 21, 2011, Trustee's Accountant filed its final fee application requesting $36,562.00 in fees and $115.62 in expenses.  ER Tab 2.  On September 30, 2011, Trustee filed her Final Report and final fee application, seeking $12,669.09 in fees and $67.95 in expenses.  ER Tab 3.  Trustee's fee calculation was based on administrative payments to Trustee's Counsel, Trustee's Accountant, a broker (International Sureties Ltd.), and a storage company (Public Storage, Inc.).  *See* ER Tab 4 at 26.

On November 1, 2011, Mohsen filed objections to the fee applications.  BR ECF Nos. 329, 330.  On November 4, 2011, Trustee's Counsel filed a supplemental declaration to address Mohsen's objections.  ER Tab 5.  On November 7, 2011, Attorney Levin also filed objections to the fee applications.  BR ECF Nos. 333, 334.  On November 10, 2011, Trustee filed a response to Attorney Levin's objections, ER Tab 6, and declarations by Trustee's Counsel and Trustee in support of the response.  ER Tabs 7 and 8.  By her declaration, Trustee confirmed that the practice of all panel trustees in the Northern District of California is to request compensation based on amounts distributed to all creditors, including administrative creditors and trustee professionals.  ER Tab 8.  According to Trustee, neither the U.S. Trustee nor any judgment in this district has ever questioned the calculation of fees based on such distributions.  *Id.*

4

United States District Court
For the Northern District of California

On December 14, 2011, the Bankruptcy Court approved interim fees to Trustee's professionals equal to 50% of the fees requested. Trustee's Counsel was awarded $72,650.62 in interim fees. ER Tab 10. Trustee's Accountant was awarded $10,000 in interim fees. ER Tab 11.

Pursuant to the Bankruptcy Court's request, Trustee filed a further memorandum in support of Trustee's fee application on December 15, 2011, and the supplemental declaration of Trustee's Counsel to address discovery efforts in the 727 Action. ER Tab 13. On April 19, 2012, the Bankruptcy Court ordered Trustee, Trustee's Counsel, and Trustee's Accountant to provide supplemental evidence relating to the fee applications of, including without any limitation, explanation of any cost benefit analysis regarding the 727 Action and the DQ Motion. ER Tab 14. On April 23, 2012, Trustee filed her supplemental response and evidence requested by the Bankruptcy Court. ER Tab 15.

On June 9, 2012, the Bankruptcy Court issued its Memorandum Decision on contested fee applications and Trustee's Final Report. ER Tab 16. In its decision, the Bankruptcy Court: (1) approved Trustee's final account and fee application, in the amount of $12,669.09 for fees and $67.95 for expenses; (2) approved the final fee application of Trustee's Accountant in the amount requested, $36,562 for fees and $115.62 for expenses; and (3) approved the final fee application of Trustee's Counsel in the amount of $102,226.50 for fees and $11,172.73 for expenses. The interim fee awards were included in these final fee award amounts.

On June 22, 2012, the United States Bankruptcy Court entered an order approving the Trustee's final account and payment of professional fees in Mohsen's bankruptcy case. *See* ECF No. 1, at 17 ("Order"). The following day, pursuant to 28 U.S.C. § 158(a) and (c)(1), Mohsen signed and mailed a Statement to Assign Notice of Appeal to the United States District Court. ECF No. 1, at 3, 5. These documents were filed on July 10, 2012. *Id.*

Mohsen filed his opening brief on July 18, 2013. *See* ECF No. 14. Trustee filed her responsive brief on August 12, 2013. *See* ECF No. 15. Mohsen's reply brief was due on August 22, 2013, but Mohsen failed to file a reply brief.

## II.   ISSUES ON APPEAL

The issues presented on appeal are:

(1) Did the Bankruptcy Court err in calculating Trustee's compensation under 11 U.S.C. § 326(a) by interpreting "parties in interest" to include Trustee's Accountant and Trustee's Counsel?

(2) Did the Bankruptcy Court err in awarding any fees to Trustee's Accountant and Trustee's Counsel for services rendered in certain matters under 11 U.S.C. § 330(a)?

(3) Did the Bankruptcy Court err in awarding fees to Trustee's Counsel based on the lodestar method for services rendered in certain matters under 11 U.S.C. § 330(a)?

## III.   STANDARD OF REVIEW

A federal district court has jurisdiction to entertain an appeal from the Bankruptcy Court under 28 U.S.C. § 158(a), which provides: "The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees[] of bankruptcy judges[.]"  On appeal, a district court reviews a bankruptcy court's conclusions of law de novo, and the bankruptcy court's factual findings for clear error.  *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009) (citing *In re Raintree Healthcare Corp.*, 431 F.3d 685, 687 (9th Cir. 2005)); *In re Salazar*, 430 F.3d 992, 994 (9th Cir. 2005).  Questions of statutory interpretation are subject to de novo review.  *In re MacIntyre*, 74 F.3d 186, 187 (9th Cir. 1996).  The bankruptcy court's approval of administrative expenses and award of attorney's fees is reviewed for abuse of discretion.  *See Hale v. United States Tr.*, 509 F.3d 1139, 1146 (9th Cir. 2007); *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir. 1985).  This means that a court should not reverse an award of fees unless it has "a definite and firm conviction that the bankruptcy court committed clear error in the conclusion it reached after weighing all of the relevant factors."  *In re Eliapo*, 468 F.3d 592, 596 (9th Cir. 2006).

## IV.   DISCUSSION

### A.   Did the Bankruptcy Court err in calculating Trustee's compensation under 11 U.S.C. § 326(a) by interpreting "parties in interest" to include Trustee's Accountant and Trustee's Counsel?

Section 326(a) of the Bankruptcy Code limits a trustee's compensation to a percentage of the estate money the trustee distributes to "parties in interest."  However, the statute does not define "parties in interest", and there is a split of authority as to whether the trustee's professionals, e.g. counsel and accountants to the trustee, constitute "parties in interest."  Thus, there is also a split of authority as to whether fees paid to the trustee's counsel and accountants should be included in the distributed estate money from which the trustee's compensation is calculated.

In the instant case, the Bankruptcy Court held that Trustee's Counsel and Trustee's Accountant constituted "parties in interest" and thus calculated Trustee's compensation based on estate money distributed to Trustee's Counsel and Trustee Accountant for their fees.  On appeal, Mohsen contends that the Bankruptcy Court erred because Trustee's Counsel and Trustee's Accountant do not constitute "parties in interest" and thus Trustee cannot be compensated a percentage of the estate money distributed to Trustee's Counsel and Trustee's Accountant.  *See* Appellant's Br. at 5.

Specifically, Section 326(a) of the Bankruptcy Code limits a trustee's compensation to the following percentages of the estate money the trustee distributes to parties in interest:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, **upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.**

11 U.S.C. § 326(a) (emphasis added).  As stated above, the statute does not expressly define "parties in interest", and courts are split on whether "parties in interest" include a trustee's professionals, such as the trustee's counsel and accountant.  3 Collier on Bankruptcy 326.02(2)(e) (stating that "there is disagreement over whether payments to administrative expense claimants should be included when computing the cap.").

In *In re Testaverde*, 2004 Bankr. LEXIS 1964 (Bankr. E.D.N.Y. March 12, 2004), Bankruptcy Judge Stan Bernstein held that a trustee's professionals' fees are excluded from the distributed estate money from which the trustee's compensation is calculated.  *See id.* at *2.  Judge

1    Bernstein reasoned that "if the Court were to allow such a formula the trustee would be 'double-

2    dipping' by receiving commissions on top of fees paid to its counsel." *Id*.  The district court in

3    *Testaverde* subsequently affirmed Judge Bernstein.  *In re Testaverde*, 317 B.R. 51, 52 (E.D.N.Y.

4    2004).  In affirming, the district court relied upon the plain meaning of "parties in interest" because

5    the statute does not define the term.  *See id*. at 54.  In addition, the district court consulted Black's

6    Law Dictionary and found that "party in interest" is defined as "one whose pecuniary interest is

7    directly affected by the bankruptcy proceeding." *Id*.  The district court concluded that a trustee's

8    counsel "does not have a pecuniary interest that is directly affected by the bankruptcy proceeding."

9    *Id*.  Instead, the trustee's counsel is merely "an entity hired to assist trustee, who is the

10   administrator of the debtor's estate." *Id*.  Accordingly, the district court concluded that "the plain

11   language of Section 326 does not include moneys given to Trustee's counsel" and such moneys

12   should not be included in the calculation of the trustee's compensation. *Id*.

13          Similarly, in another bankruptcy proceeding, Judge Bernstein held that a trustee's attorneys

14   are not "parties in interest" and thus excluded the trustee's attorneys' fees when calculating the

15   trustee's compensation. *See In re Stein*, 2005 U.S. Dist. LEXIS 30278, at *15-16 (E.D.N.Y. March

16   25, 2005).  Judge Bernstein reasoned that "[b]y definition, the trustee's general counsel is neither a

17   creditor nor a party in interest." *Id*. at *16.  The district court, relying on the reasoning in

18   *Testaverde*, affirmed Judge Bernstein's holding.  *Id*. at *16-19.

19          In *In re Vona*, 333 B.R. 191 (Bankr. E.D.N.Y. 2005), however, Judge Bernstein

20   reconsidered his holdings in *Testaverde* and *Stein* and acknowledged that there are "several

21   difficulties with the 'plain language' analysis in both the *Testaverde* and *Stein* decisions." *Id*. at

22   195.  Judge Bernstein examined the language surrounding the term "parties in interest" and the

23   other relevant sections of the Bankruptcy Code and determined that a trustee's attorney's fees

24   should be included when calculating a trustee's compensation. *See id*. at 195-97.  According to

25   Judge Bernstein, the plain language analysis is incomplete by virtue of its failure to define each of

26   the terms in Section 326(a)—particularly the key word "including." *Id*.  Judge Bernstein noted that

27   although "parties in interest" is not defined in the Bankruptcy Code, the preposition "including" is.

28   *Id*.  Under Section 102(3) of the Bankruptcy Code, "'includes' or 'including' are not limiting." *Id*.

United States District Court
For the Northern District of California

8

1   In addition, the Black's Legal Dictionary definition of the term "parties in interest" does not suffice

2   because Black's Legal Dictionary is not "statute-specific." *Id*. at 197.

3        Moreover, Judge Bernstein considered all other relevant sections of the Bankruptcy Code

4   "which may supply the implicit missing terms of reference." *Id*. at 197.  Specifically, Judge

5   Bernstein considered Section 726(a) to help resolve the ambiguity of "parties in interest." *Id*. at

6   196.  Under Section 726, after paying the secured creditors, the highest sub-class of intended

7   beneficiaries are those who supplied goods or services to the trustee on behalf of the estate.  *See id*.

8   A trustee's professionals, therefore, have an interest in the distributions from an estate.  *Id*. at 198.

9   Thus, according to Judge Bernstein, a trustee's professionals should be deemed "parties in interest"

10  under Section 326(a).  *Id*.

11       Subsequently, the Bankruptcy Court in *In re Kohl*, 421 B.R. 115 (Bankr. S.D.N.Y. 2009),

12  cited *Vona*'s analysis and reached the same conclusion:

> By including the word "including" in the statute, the [*Vona*] court reasoned that
> Congress intended a broad interpretation of the statute and not one cabined to the
> dictionary definition of "parties in interest."  The court noted that section 726 of the
> Code requires a trustee to make distributions from the estate in priority order,
> including distributions to the trustee's professionals.  Under this logic, a trustee's
> professionals clearly have an interest in the distributions from an estate, as they are
> second in line to be paid from the liquidation of the estate.  Thus, for purposes of
> section 326 they should be considered parties in interest and distributions to these
> entities should be included when calculating the trustee's commission.

18  *Id*. at 130 (internal citations omitted).

19       In the instant case, the Bankruptcy Court found the analysis in *Vona* and *Kohl* more

20  persuasive than the analysis in *Testaverde*.  ER Tab 16 at 5.  The Bankruptcy Court stated that

21  "Trustee's professionals have a pecuniary interest in the bankruptcy estate to the same extent as

22  any other administrative claimant."  *Id*.  As such, the Bankruptcy Court held that Trustee's Counsel

23  and Trustee's Accountant constituted "parties in interest" and thus calculated Trustee's

24  compensation based on estate money distributed to Trustee's Counsel and Trustee's Accountant for

25  their fees.  *See id*. at 5, 27.

26       This Court agrees with the Bankruptcy Court in the instant case.  In light of Judge

27  Bernstein's persuasive analysis in *Vona*, this Court agrees that the plain language analysis in

28  *Testaverde* is flawed because it relies on a non-statute specific definition from a legal dictionary

9

1    and does not take into account other relevant sections of the Bankruptcy Code.  This Court agrees

2    with Judge Bernstein's analysis in *Vona* that, "parties in interest" in conjunction with the term

3    "including"—as defined by Section 102(3)—is meant to be non-limiting.  Moreover, contrary to

4    *Testaverde*, a trustee's professionals have direct pecuniary interest in the bankruptcy estate because

5    they are second in line to be paid from the liquidation of the estate.[4]  Further, if a trustee's

6    professionals are not given such priority, such professionals would likely refuse to confer the

7    benefits of their services on the estate "and would thereby jeopardize the orderly organization or

8    administration of the estate."  *In re Cochise College Park*, 703 F.2d 1339, 1354-55 (9th Cir. 2006).

9    Finally, in the instant case, distributions to brokers (International Sureties Ltd.) and a storage

10    company (Public Storage, Inc.) are included in the distributed estate money from which Trustee's

11    compensation is calculated.  *See* ER Tab 4 at 24.  Mohsen does not dispute the inclusion of these

12    administrative expenses of Trustee.  However, if this Court were to extend the logic in *Testaverde*,

13    then such entities would not constitute "parties in interest" and thus could not be paid.  As stated by

14    the Bankruptcy Court, "[t]here is no reasoned basis for distinguishing between distributions to pay

15    other administrative expenses, which are included as part of Trustee's commission calculation, and

16    distributions to pay the trustee's professional fees, which under *Testaverde*, are not."  ER Tab 16 at

17    5.

18        For the foregoing reasons, the Bankruptcy Court did not err in calculating Trustee's

19    compensation under 11 U.S.C. § 326(a) by interpreting "parties in interest" to include Trustee's

20    Accountant and Trustee's Counsel.

21

22

23        **B.    Did the Bankruptcy Court err in awarding any fees to Trustee's Accountant and
           Trustee's Counsel for services rendered in certain matters under 11 U.S.C. §
24           330(a)?**

25

26    [4] Section 726(a)(1) provides that unencumbered property of the estate shall be distributed first to
      claims in the order of priority specified in Section 507.  Section 507(a)(1)(C) provides that

27    administrative expenses of the trustee allowed under Section 503(b) shall be paid first.  Under
      Section 503(b)(2), administrative expenses include compensation and reimbursement awards to

28    professional persons—including attorneys—under Section 330(a).

                                                    10

1    The court may award a trustee's professionals "reasonable compensation for actual,

2  necessary services rendered" and "reimbursement for actual and necessary expenses." 11 U.S.C. §

3  330(a)(1)(A), (B). The court may award compensation that is less than the amount of

4  compensation that is requested. 11 U.S.C. § 330(a)(2). However, the court shall not allow

5  compensation for "unnecessary duplication of services" or services that were not "reasonably likely

6  to benefit the debtor's estate" or "necessary to the administration of the case." 11 U.S.C. §

7  330(a)(4)(A). To meet this standard, an applicant need only demonstrate that the services provided

8  were reasonably likely to benefit the estate at the time the services were rendered. *In re Mednet*,

9  251 B.R. 103, 108 (9th Cir. B.A.P. 2000). When the cost benefit analysis shows that the only

10  parties reasonably likely to benefit from a service are the trustee and his professionals, "the service

11  is unwarranted, and a court does not abuse its discretion in denying fees for those services." *In re

12  Mednet*, 251 B.R. at 109.

13    Mohsen argues that "the standard of 'cost benefit' analysis was misapplied." Appellant's

14  Br. at 8. Particularly, Mohsen contends that Trustee's Accountant and Trustee's Counsel provided

15  services that were not reasonably likely to benefit the estate and that "the only parties who will

16  likely benefit are the Trustee and her professionals" in the following matters: (1) Trustee's

17  objection to Mohsen's discharge ("727 Action"); (2) litigation against Star Trust and AIM entities;

18  and (3) forensic accounting and asset identification. Appellant's Br. at 8-16. Therefore, Trustee's

19  Accountant and Trustee's Counsel should not be awarded any fees at all under Section

20  330(a)(4)(A). *See id.*

21    Because of Mohsen's narrow challenge, this Court need only determine the threshold issue

22  of whether the services provided in these matters were reasonably likely to benefit the estate and

23  thus compensable. *See In re Lederman Enters.*, 997 F.2d 1321, 1323 (10th Cir. 1993) (noting that

24  "the beneficial nature of legal services must be determined before a reasonableness inquiry [of

25  fees] may even be conducted . . ."); *see also In re Racing Servs.*, 2004 Bankr. LEXIS 1496 *4

26  (Bankr. D.N.D. July 14, 2004) (stating that under § 330(a)(4)(a), "the court may not award

27  compensation if the services rendered were not reasonably likely to benefit the estate . . . [t]hus, by

28  negative implication, a court may award compensation if the services rendered were reasonably

Case No.: 12-CV-03610-LHK
ORDER AFFIRMING BANKRUPTCY COURT ORDER

United States District Court
For the Northern District of California

1    likely to benefit the debtor's estate[.]").  This Court need not determine the reasonableness of fees

2    by Trustee's Accountant and Trustee's Counsel.  For the reasons stated below, the services

3    provided by Trustee's Accountant and Trustee's Counsel in each of these matters were reasonably

4    likely to benefit the estate and thus compensable.  Accordingly, the Bankruptcy Court did not

5    abuse its discretion in awarding fees to Trustee's Accountant and Trustee's Counsel for their

6    services in these matters.  This Court discusses each matter in turn.

7               **1.        Trustee's Objection to Mohsen's Discharge ("727 Action")**

8               Under the Bankruptcy Code, chapter 7 trustees have an express statutory duty to challenge

9    a debtor's right to receive a discharge, "if advisable."  11 U.S.C. § 704(a)(6).  One treatise explains

10   that this duty should be predicated on whether it will be of substantial benefit to the unsecured

11   creditors holding dischargeable debts.  4 NORTON BANKRUPTCY LAW AND PRACTICE

12   § 77:17 (3rd ed. 2008).  In deciding whether an objection to discharge will be of substantial benefit,

13   and therefore advisable, the treatise identifies three general factors that trustees should evaluate: (1)

14   whether grounds to object under § 727 exist; (2) whether any creditor has objected to discharge

15   and, if so, the probable outcome of the objection; and (3) whether creditors will be substantially

16   benefitted by continuing a debtor's liability for pre-petition debt.  *Id*.  If an objection to discharge is

17   advisable, then the assistance of attorneys or accountants with respect to the discharge litigation is

18   authorized as necessary to carry out the trustee's statutory duties under § 327 of the Bankruptcy

19   Code and § 330(a) authorizes reasonable compensation for actual necessary services.  *See In re*

20   *Hugues*, 2006 WL 3590253, at *1-*2 (Bankr. D. Idaho, Dec. 8, 2006).

21              This Court evaluates the three factors and finds that the record supports the Bankruptcy

22   Court's finding that circumstances were sufficient to render the filing of the 727 Action

23   "advisable."  First, Trustee had grounds to object to Mohsen's discharge under § 727.  Under

24   § 727(a)(3), the court shall grant the debtor a discharge, unless the debtor has concealed, destroyed,

25   falsified, or failed to keep adequate books and records from which his affairs could be ascertained.

26   Here, Trustee believed that Mohsen's claims of poverty were a ruse to allow Mohsen to hide assets.

27   ER Tab 15 at 4.  According to Trustee's Counsel, there was evidence indicating that Mohsen

28   continued to maintain a residence in Egypt and, while free on bail, Mohsen had been arrested in an

12

**United States District Court**
For the Northern District of California

1    airport parking lot with $40,000 in cash and a substitute passport. *Id*. Trustee's Counsel also

2    explained that Mohsen's financial affairs were complex. Mohsen had controlled millions of dollars

3    flowing through multiple individuals and entities. *Id*. Thus, the complexity of the financial affairs,

4    coupled with the relative dearth of documentation, raised questions in the minds of Trustee's

5    counsel and Trustee as to whether Mohsen had adequately maintained records. *Id*. Trustee's

6    Counsel reasonably believed that Mohsen would produce the records if faced with a loss of his

7    discharge. ER Tab 15 at 4. Second, no other creditor had objected to discharge and, as Trustee's

8    Counsel advised at the hearing on these fee applications, the U.S. Trustee had already asked

9    Trustee to file the 727 Action. Thus, Trustee was compelled to initiate the 727 Action. Finally,

10   Mohsen's history of wealth and untruthfulness gave Trustee a basis for believing that, if Mohsen's

11   records were produced, it was likely that additional assets would be exposed and could be

12   liquidated for the benefit of Debtor's creditors. ER Tab 15 at 4. Accordingly, this Court finds that

13   the filing of the 727 Action was "advisable."

14           Mohsen also argues that the ground for the 727 Action did not exist when Trustee filed the

15   action. Appellant's Br. at 9. Mohsen points to the Bankruptcy Court's eventual holding that

16   Trustee "lacked proof as to [Mohsen's] material failure to produce records." *Id*. However, the fact

17   that Trustee's Counsel did not ultimately prevail is not dispositive. "Services that are reasonably

18   likely to provide an identifiable, tangible, and material benefit to the estate can be compensated,

19   *even if they do not actually provide such a benefit*." *In re Smith*, 317 F.3d 918, 926 (9th Cir. 2002)

20   (emphasis added), *abrogated on other grounds by Lamie v. United States Tr.*, 540 U.S. 526 (2004).

21   The test is whether the services provided were reasonably likely to benefit the estate at the time the

22   services were rendered. *In re Mednet*, 251 B.R. at 108. As set forth above, the circumstances,

23   which included Mohsen's history of wealth and untruthfulness, Mohsen's arrest in an airport

24   parking lot with $40,000 in cash and a substitute passport, and the relative dearth of

25   documentation, made the 727 Action reasonably likely to benefit the estate at the time the 727

26   Action services were rendered.

27           In light of the foregoing, this Court finds that the filing of the 727 Action was "advisable"

28   and reasonably likely to benefit the estate at the time the services were rendered. The Bankruptcy

Case No.: 12-CV-03610-LHK
ORDER AFFIRMING BANKRUPTCY COURT ORDER

1    Court, therefore, did not abuse its discretion in awarding fees to Trustee's Accountant and

2    Trustee's Counsel for this matter.

3                    **2.      Litigation Against Star Trust and AIM Entities**

4            Mohsen argues that the Bankruptcy Court erred in awarding any fees to Trustee's Counsel

5    for the litigation against the AIM Entities because the litigation was not reasonably likely to benefit

6    the estate.  Appellant's Br. at 13.  Particularly, Mohsen argues that "[t]he Trustee and her

7    experienced professionals knew or should have known that the complaint cannot succeed under the

8    governing law in California and the Ninth Circuit."  *Id.*

9            As set forth above, Trustee's Counsel's services are compensable if they were reasonably

10   likely to benefit the estate at the time the services were rendered.  *In re Mednet*, 251 B.R. at 108.

11   Based on the record, Trustee's Counsel performed services in order to obtain and retain additional

12   funds for the estate.  Trustee's Counsel assisted in investigating the ownership of the $51,000

13   amount from the debtor in possession and helped recover $68,407.  ER Tab 15 at 4.  Trustee's

14   Counsel initiated an adversary proceeding against Star Trust and the AIM entities to determine

15   ownership of the nearly $120,000 in dispute.  ER Tab 15 at 5.  Even though judgment was entered

16   by default, Trustee's Counsel defended the judgment against multiple attacks by Mohsen before the

17   Bankruptcy Court and on appeal.  ER Tab 1 at 5.  It is clear that obtaining the nearly $120,000 in

18   dispute would be beneficial to the estate, and the subsequent litigation was necessary to maintain

19   the estate's ownership of the funds.  Notably, the subsequent litigation after the default judgment

20   was the result of Mohsen's motions and appeals.  The fact that Trustee had to defend the judgment

21   against multiple unsuccessful attacks from Mohsen should not be held against Trustee's Counsel.

22   As the Bankruptcy Court noted, "there was little [Trustee's Counsel] could do short of abandoning

23   the funds to [Mohsen], a result that would have been detrimental to the estate."  ER Tab 16 at 17.

24           Because this Court finds that Trustee's Counsel's services were reasonably likely to benefit

25   the estate at the time the services were rendered, this Court finds the services compensable.

26   Accordingly, this Court finds that the Bankruptcy Court did not abuse its discretion in awarding

27   Trustee's Counsel fees for litigating against Star Trust and the AIM Entities.

28                   **3.      Forensic Accounting and Asset Identification**

14

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    Mohsen contends that the Bankruptcy Court erred in awarding Trustee's Accountant fees

2    for forensic accounting and Trustee's Counsel fees for asset identification.  According to Mohsen,

3    these services were "unnecessary and of no benefit to the Estate . . . at the time they were done."

4    Appellant's Br. at 14.  Particularly, "all the brokerage accounts in Morgan Stanley subject to

5    Trustee's Accountant's forensic services were closed in 2004 and had no funds to be recovered for

6    the benefit of the Estate."  *Id.*  Further, the services pertaining to asset identification were

7    "administrative obligations" of Trustee and therefore not chargeable as attorney's fees.  *Id.*  Thus,

8    according to Mohsen, all of the fees of Trustee's Accountant and Trustee's Counsel should be

9    denied.  *Id.* at 14-15.

10    The Bankruptcy Court concluded that the forensic accounting was reasonably likely to

11    benefit the estate at the time that the services were rendered.  As Trustee's Counsel and Trustee's

12    Accountant explained in their declarations, Mohsen's pre-petition wealth, Mohsen's history of

13    deceit, and the absence of adequate records raised significant concerns as to whether substantial

14    assets might be hidden.  ER Tab 15 at 4.  Trustee was entitled to test the validity of these concerns.

15    The amount of assets at issue could not be known until the forensic accounting was completed.  As

16    such, the forensic accounting was reasonably likely to benefit the estate.

17    Further, the Bankruptcy Court found that asset identification by Trustee's Counsel "fall[s]

18    within the domain of compensable legal services."  ER Tab 16 at 25.  Trustee's Counsel: (1) billed

19    time for communications with the lawyer for Mohsen's son related to documents located in a

20    storage facility and time for Mohsen's son's Rule 2004 examination[5]; (2) worked with Trustee's

21    Accountant regarding the review and investigation of the records in the storage facility; (3)

22    prepared and served third party subpoenas, as well as communicated with the subpoena recipients;

23    (4) advised Trustee concerning the abandonment of certain property in Egypt, prepared a related

24    notice and motion to abandon, and prepared an application for relief by default.  ER Tab 1 at 4.

25    According to the Bankruptcy Court, such tasks were "well within the type of services that counsel

26    _____

27    [5] Rule 2004 of the Federal Rules of Bankruptcy Procedure states that on motion of party in interest, the court may order the examination of any entity.  Under Rule 2004, any discovery may be conducted which relates to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate.

28

Case No.: 12-CV-03610-LHK
ORDER AFFIRMING BANKRUPTCY COURT ORDER

1    for a trustee would typically render[;]. [t]hey are not ordinarily part of a trustee's administrative

2    duties." ER Tab 16 at 26.  These tasks were also reasonably likely to benefit the estate because

3    they were able to potentially identify other assets recoverable for the estate.

4       Because this Court finds that the services by Trustee's Accountant and Trustee's Counsel

5    were reasonably likely to benefit the estate at the time the services were rendered, this Court finds

6    the services compensable.  Accordingly, this Court finds that the Bankruptcy Court did not abuse

7    its discretion in awarding fees to Trustee's Accountant for forensic accounting and Trustee's

8    Counsel for asset identification.

9       **C.**      **Did the Bankruptcy Court err in awarding Trustee's Counsel fees based on the**

10              **lodestar method for services rendered in certain matters under 11 U.S.C.**
             **§ 330(a)?**

11       A determination of a reasonable fee allowance under § 330 is achieved by answering the

12    following five questions:

13       (1) Were the services authorized?

14       (2) Were the services necessary or beneficial to the administration of the estate at the time

15          they were rendered?

16       (3) Are the services adequately documented?

17       (4) Are the fees requested reasonable, taking into consideration the factors set forth in

18          § 330(a)(3)?

19       (5) Did the professional exercise reasonable billing judgment?

20    *In re Strand*, 375 F.3d 854 (9th Cir. 2004) (citing *In re Mednet*, 251 B.R. at 108).

21       "The customary method for assessing an attorney's fee application in bankruptcy is the

22    'lodestar,' under which 'the number of hours reasonably expended' is multiplied by 'a reasonable

23    hourly rate' for the person providing the services."  *In re Eliapo*, 468 F.3d 592, 598 (9th Cir. 2006)

24    (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also In re Yermakov*, 718 F.2d 1465

25    (9th Cir. 1983) (finding that the lodestar method is the "primary" method used in determining a

26    reasonable attorney fee).  The court may depart from the lodestar method where the attorney fails

27    to sufficiently provide a detailed fee application for the court to calculate the lodestar.  *Unsecured*

28    *Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 961 (9th Cir. 1991) (stating that "if

16

a fee application is inadequate, the court should not be forced to wade through it in order to calculate the 'lodestar'").  In such circumstances, the court may use an alternative method—one-third of the recovered amount—as reasonable compensation.  *Id.*

Mohsen contends that the standards of "necessary," "beneficial," 'scaling back to reasonable expected recovery," and "proper billing judgment" for 11 U.S.C. § 330(a) were misapplied.  Appellant's Br. at 16.  Specifically, Trustee's Counsel failed to scale their fees to the "reasonable expected recovery" and the fees are "grossly disproportionate to the recovery at stake" in two matters: (1) Trustee's litigation against State Farm; and (2) Trustee's disqualification motion of Attorney Levin as Mohsen's chapter 11 counsel.  Appellant's Br. at 16-20.  Thus, according to Mohsen, in awarding Trustee's Counsel's fees, this Court should abandon the lodestar method and adopt an alternative method—one-third of the recovery for the estate as set forth in *Puget Sound Plywood*.  *Id.*

For the reasons stated below, the Bankruptcy Court did not abuse its discretion in awarding reduced fees to Trustee's Counsel based on the lodestar method for their services in these two matters.  This Court discusses each matter in turn.

### 1.   Trustee's Litigation Against State Farm

When Mohsen's chapter 11 bankruptcy case was converted to chapter 7, Trustee substituted in as plaintiff in the litigation that Mohsen had filed, post-petition but pre-conversion, against State Farm.  Mohsen had claimed that State Farm owed an additional $232,000 in insurance coverage as a result of substantial pre-petition fire damage to Mohsen's residence.  ER Tab 1 at 6.  Trustee's Counsel proceeded to investigate the merits of Mohsen's claims through both written discovery and depositions.  *Id.*  Ultimately, after further investigation, Trustee's Counsel concluded that there was no evidence to support Mohsen's claim that State Farm owed additional money to the estate.  *Id.*  Trustee settled the claim with State Farm for $30,000.  *Id.*  Trustee's Counsel then sought $29,404 in fees related to this litigation and compromise.  ER Tab 1 at 6-7.

The Bankruptcy Court found that Trustee's Counsel "performed actual and necessary services to investigate and settle the adversary proceeding."  ER Tab 16 at 21.  First, Trustee's Counsel incurred approximately $8,000 in fees up until the deposition of State Farm's adjustor—

17

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   the point where Trustee's Counsel was relatively certain that there was no available evidence to

2   support the claim against State Farm.  ER Tab 1, Ex. G.  Up until that point, Trustee's Counsel had

3   written discovery, reviewed documents, appeared at several status conferences, engaged in ongoing

4   communications with opposing counsel, and conducted two lengthy depositions.  *Id*.  Second,

5   Trustee's Counsel incurred approximately $1,400 negotiating the settlement with State Farm.  *Id*.

6   The time records show that this consisted of telephonic and email communications with opposing

7   counsel, attendance at court status conferences, and multiple communications with Trustee.  Upon

8   review, the Bankruptcy Court found that $9,400 total fees for these tasks were reasonable.  ER Tab

9   16 at 20.

10       The Bankruptcy Court, however, found that some of Trustee's Counsel's fees in relation to

11   certain tasks were excessive.  First, Trustee's Counsel incurred about $9,000 in fees to prosecute an

12   application to approve the compromise with State Farm.  ER Tab 1, Ex. G.  The Bankruptcy Court

13   concluded that $3,000 should have been sufficient to obtain a relatively simple order approving the

14   compromise and reduced the requested fees by $6,000.  ER Tab 16 at 20.  Second, Trustee's

15   Counsel incurred $10,000 in representing Trustee in Mohsen's appeals of the Bankruptcy Court's

16   order approving compromise to the BAP and Ninth Circuit.  ER Tab 1, Ex. G.  The Bankruptcy

17   Court, however, reduced the fees based on time spent reviewing orders, notices, and motions that

18   did not require a response ($1,200 reduction) and time spent on reviewing matters in the Ninth

19   Circuit appeal that did not require a response ($900 reduction).  ER Tab 16 at 20.  In sum, the

20   Bankruptcy Court reduced the total fees by $8,100, and thus awarded Trustee's Counsel $21,304

21   for fees incurred in the State Farm litigation.  *Id*.

22       Mohsen argues that this Court should depart from the lodestar method and instead adopt the

23   alternative method set forth in *Puget Sound Plywood* (1/3 of the recovery for the estate) in

24   computing Trustee's Counsel's fees.  Appellant's Br. at 18.  Thus, Trustee's Counsel's fees should

25   be $7,974 (one-third of $23,925[6]).  *Id*.  Mohsen reasoned that "Trustee and her professionals failed

26

27

28   _____

[6] $23,925 represents the settlement amount of $30,000 less the debtor exemption of $6,075.  *See*
Appellant's Br. at 17-18.

18

United States District Court
For the Northern District of California

1    to recognize the undisputed evidence in State Farm's discovery documents supporting the claim."

2    *Id.* at 17.  This Court disagrees.

3        First, Trustee's Counsel obtained all of State Farm's records and reviewed those in detail.

4    When Trustee's Counsel became convinced that Trustee could not recover any additional funds

5    from State Farm based upon the evidence, Trustee's Counsel settled the litigation.  ER Tab 1 at 6.

6    Indeed, Trustee obtained court approval of the settlement over Mohsen's objection and

7    successfully defended the compromise in two appeals.  *Id.*  Mohsen first appealed the compromise

8    before the BAP, which affirmed the Bankruptcy Court's order approving the compromise.  ER Tab

9    5, Ex. D.  Mohsen then appealed to the Ninth Circuit, which also affirmed the BAP based on a de

10   novo review.  ER Tab 5, Ex. E.  The Supreme Court denied Mohsen's petition for a writ of

11   certiorari.  ER Tab 5 at 2.

12       In addition, Trustee's Counsel's fees in investigating and settling the State Farm matter

13   were reasonable.  To the extent that some of those fees were excessive, the Bankruptcy Court made

14   the appropriate reductions.  The fact that Trustee defended against Mohsen's multiple unsuccessful

15   attacks on the court-approved settlement—and consequently incurred more fees—should not be

16   held against Trustee's Counsel.  Moreover, Mohsen's reliance on *Puget Sound Plywood* is

17   misplaced.  The court in *Puget Sound Plywood* concluded that deviation from the lodestar

18   calculation was appropriate where the attorney's fee application was not sufficiently detailed.  924

19   F.2d at 960-961.  Here, Mohsen does not argue that Trustee's Counsel's application was not

20   sufficiently detailed.  Indeed, the record shows that Trustee's Counsel's fee application was

21   sufficiently detailed.  In their fee application, Trustee's Counsel attached corresponding time sheets

22   that were specific to the State Farm litigation.  ER Tab 1.  Each time entry included the date,

23   description of task, and the amount of time spent.  *Id.*  The sufficient detail of the time entries

24   enabled the Bankruptcy Court to calculate the lodestar and determine which fees were reasonable

25   and which were excessive.

26       Accordingly, this Court finds that the Bankruptcy Court did not abuse its discretion in

27   adopting the lodestar method—instead of the alternative fee formula in *Puget Sound Plywood*—in

28   awarding reduced fees to Trustee's Counsel for the State Farm litigation.

Case No.: 12-CV-03610-LHK
ORDER AFFIRMING BANKRUPTCY COURT ORDER

1

United States District Court
For the Northern District of California

2

### 2.   Disqualification Motion of Attorney Levin as Chapter 11 Counsel

Attorney Levin had filed an application to be employed as attorney for Mohsen *nunc pro tunc*. ER Tab 1 at 2.  Attorney Levin sought an award of fees for Chapter 11 work in the amount of $47,135 in his first fee application.  *Id*.  He also filed a second fee application for an additional $37,912 in fees.  ER Tab 15 at 6.  Trustee objected on the ground that Trustee was investigating whether Attorney Levin had an undisclosed conflict of interest that would disqualify Attorney Levin from receiving compensation.  ER Tab 15 at 7.  On May 31, 2006, Trustee's Counsel filed Trustee's motion to disqualify Attorney Levin ("DQ Motion").  BR ECF No. 205.  Trustee contended that, in seeking approval of employment, Attorney Levin had misrepresented his disinterestedness to the Bankruptcy Court because in June 2005, Attorney Levin was simultaneously representing Mohsen's estate and a conflicting interest in AIM Inc.  ER Tab 15 at 7.  The DQ Motion requested disqualification of Attorney Levin, denial of all fees requested, and disgorgement of all fees already paid to Attorney Levin.  BR ECF No. 205.  The Bankruptcy Court ultimately denied the motion to disqualify.  *See* ER Tab 7, Ex. C.  However, the Bankruptcy Court required Attorney Levin to return $4,480 in funds that Attorney Levin had retained as payment of Attorney Levin's contingency fee for representing AIM Inc.  *Id*.  Trustee's Counsel then sought $14,574 in fees for the DQ Motion.  ER Tab 1 at 3.

The Bankruptcy Court found that Trustee's Counsel's fees for the DQ Motion were reasonably likely to benefit the estate at the time the services were rendered.  ER Tab 16 at 12.  If successful, the DQ Motion could have recovered over $85,000 for the estate.  At the time that the DQ Motion was filed, it was difficult to perform a cost-benefit analysis of the DQ Motion because Attorney Levin was not forthcoming with information related to his conflict of interest.  ER Tab 15 at 7.  Nevertheless, Trustee had some evidence that Attorney Levin had acted in his own interest and in the interest of AIM Inc. to the detriment of Mohsen's estate.  *Id*.  Attorney Levin had failed to fully disclose his connections with AIM Inc.  *Id*.  Further, the Bankruptcy Court found that case law was favorable to Trustee's position.  ER Tab 16 at 12.  As such, Trustee's Counsel had reason to believe that the DQ Motion could reasonably result in a significant recovery for the estate.

20

United States District Court
For the Northern District of California

1    After reviewing Trustee's Counsel's time records, however, the Bankruptcy Court

2  concluded that time spent to research and draft the DQ Motion was excessive.  ER Tab 16 at 12.

3  Trustee's Counsel had spent 20 hours, incurring $7,820.50 in fees, in preparing and filing the DQ

4  Motion.  ER Tab 1, Ex. C.  But the DQ Motion was not particularly complex.  The motion included

5  a two-page summary of facts and five pages of legal argument.  BR ECF No. 205.  Attached to the

6  DQ motion is a two-page declaration with multiple exhibits.  *Id.*  Further, Trustee's Counsel is a

7  well-known San Francisco Bay Area firm, and the primary attorney handling the matter is a

8  seasoned attorney with substantial bankruptcy experience.  *Id.*  In light of these factors, the

9  Bankruptcy Court concluded that 12 hours of a senior attorney's time should have been sufficient

10  to research and draft the DQ Motion.  ER Tab 16 at 13.  Accordingly, the Bankruptcy Court

11  reduced Trustee's Counsel's fees by $2,200.  *Id.*

12    Mohsen argues that the recovery of $85,000 was virtually impossible because Mohsen had

13  waived the conflicts on behalf of the estate and AIM and that the Bankruptcy Court had already

14  approved Attorney Levin's first and second fee applications.  Appellant's Br. at 19.  According to

15  Mohsen, Trustee's Counsel "failed to scale his fees to the reasonable expected recovery" and his

16  time spent "are grossly disproportionate to the recovery at stake."  *Id.*  Thus, Mohsen asks this

17  Court to depart from the lodestar method and instead adopt the alternative method set forth in

18  *Puget Sound Plywood* (1/3 of the recovery for the estate) in computing Trustee's Counsel's fees.

19  *Id.*  In this case, Trustee's Counsel's compensation should be reduced to $1,493 (one-third of

20  $4,480 [the amount of fees disgorged by Attorney Levin]).  This Court is not persuaded.

21    As set forth by the Bankruptcy Court, the DQ Motion was reasonably likely to benefit the

22  estate given the potential recovery of $85,000, the evidence that Attorney Levin acted in his own

23  and AIM's interests to the detriment of the estate, and the case law favorable to Trustee's position.

24  To the extent that a portion of the fees was excessive, the Bankruptcy Court made the appropriate

25  reductions after scrutinizing Trustee's Counsel's billing entries.

26    Moreover, similar to Mohsen's argument in the State Farm matter above, Mohsen's reliance

27  on *Puget Sound Plywood* is misplaced.  Here, Mohsen does not argue that Trustee's Counsel's

28  application was not sufficiently detailed.  Indeed, the record shows that Trustee's Counsel's fee

21

application was sufficiently detailed.  In their fee application, Trustee's Counsel attached corresponding time sheets that were specific to the DQ Motion.  ER Tab 1.  Each time entry included the date, description of task, and the amount of time spent on the DQ Motion.  *Id*.  Unlike the fee applicant in *Puget Sound Plywood*, the sufficient detail of the time entries here enabled the Bankruptcy Court to calculate the lodestar and determine which fees were excessive.  As such, departing from the lodestar method is not necessary here.

Accordingly, this Court finds that the Bankruptcy Court did not abuse its discretion in adopting the lodestar method—instead of the alternative fee formula in *Puget Sound Plywood*—in awarding reduced fees to Trustee's Counsel for the DQ Motion.

**V.    CONCLUSION**

For the reasons stated above, this Court AFFIRMS the Bankruptcy Court's Order Regarding Trustee's Final Account and Final Fee Applications of Trustee's Accountant and Attorneys.  The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 25, 2013

LUCY H. KOH
United States District Judge

Case No.: 12-CV-03610-LHK
ORDER AFFIRMING BANKRUPTCY COURT ORDER